**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

| | | |
|---|---|---|
| **AARON L. LEWIS, III,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **No. 2:24-cv-2438-MSN-atc** |
| | ) | |
| **UNITED STATES POSTAL SERVICE,** | ) | |
| | ) | |
| **Defendant.** | ) | |

---

**REPORT AND RECOMMENDATION**

---

Before the Court by order of reference[1] is Defendant United States Postal Service's

("USPS") Motion to Dismiss, filed on May 16, 2025.  (ECF No. 39.)  When Plaintiff Aaron L.

Lewis, III failed to timely respond to the Motion, the Court ordered him to do so (ECF No. 41),

and Lewis filed his Response on July 9, 2025 (ECF No. 43).  On July 28, 2025, USPS filed a

Reply.  (ECF No. 50.)

Also before the Court is Lewis's Motion for Leave to Amend Complaint, filed on

July 25, 2025.  (ECF No. 49.)  USPS did not respond to the Motion but indicated in its Reply that

it opposes the Motion to Amend.  (ECF No. 50, at 2.)

For the reasons set forth below, it is recommended that Lewis's Motion to Amend be

granted in part and denied in part and that Lewis be granted leave to file an Amended Complaint

---

[1] Pursuant to Administrative Order No. 2013-05, this case has been referred to the United States
Magistrate Judge for management and for all pretrial matters for determination and/or report and
recommendation as appropriate.

1

consistent with this Report and Recommendation.  It is further recommended that USPS's

Motion to Dismiss be denied without prejudice.

**PROPOSED FINDINGS OF FACT**

Because this Report and Recommendation primarily concerns Lewis's Motion to Amend,

the alleged facts discussed herein are taken from Lewis's proposed Amended Complaint (ECF

No. 49-1).  Lewis alleges violations of (1) Title VII of the Civil Rights Act of 1964, 42 U.S.C.

§§ 2000e *et seq.* ("Title VII");[2] (2) the Rehabilitation Act of 1973, 29 U.S.C. §§ 791 *et seq.*

("Rehabilitation Act"), as supplemented by the provisions of the Americans with Disabilities

Act, 42 U.S.C. §§ 12101 *et seq.*; (3) the Fair Labor Standard Act of 1938, 29 U.S.C. §§ 201 *et

seq.* ("FLSA"); and (4) the Privacy Act of 1974, 5 U.S.C. § 552a ("Privacy Act").[3]  (ECF No.

49-1, at 25–31.)  Specifically, Lewis claims that, while he was performing delivery services on

behalf of USPS, USPS manipulated "the independent contractor model to exercise employer-like

control over [Lewis] without providing the attendant protections of employment law" and that he

was subjected to "psychological coercion, public defamation, threats of criminal prosecution,

discriminatory treatment, and reprisal across multiple states and postal facilities."  (*Id.* at 1.)

Lewis contends that he was eventually wrongfully terminated in retaliation for voicing his

concerns regarding his misclassification as an independent contractor, job safety issues, and race

discrimination he allegedly endured.  (*Id.* at 19.)  Further, Lewis alleges that USPS improperly

disclosed his and others' personally identifiable information in violation of the Privacy Act.  (*Id.*

---

[2] Lewis asserts claims of hostile work environment, retaliation, and disparate treatment in violation of Title VII.  (ECF No. 49-1, at 25–29.)

[3] The proposed Amended Complaint references the Occupational Safety and Health Act ("OSHA") once but is otherwise devoid of any factual allegations related to this claim.  (ECF No. 49-1, at 2.)  Neither is OSHA listed under the "Causes of Action" section of the proposed Amended Complaint.  (*Id.* at 25–31.)  As such, the Court finds that Lewis does not intend to raise an OSHA claim against USPS in the Amended Complaint.

at 30.)  He seeks declaratory and injunctive relief and damages for emotional and financial harm. (*Id.* at 1–2.)

## PROPOSED CONCLUSIONS OF LAW

**I.    Timeliness of Lewis's Motion to Amend the Complaint**

USPS opposes Lewis's request to file his Amended Complaint as untimely.  (ECF No. 50, at 1–2.)  As USPS correctly notes, the deadline to amend the pleadings was May 14, 2025. (ECF No. 23.)  Lewis first requested permission to amend in his response to USPS's Motion to Dismiss on July 9, 2025 (ECF No. 43), and again in a standalone Motion on July 25, 2025 (ECF No. 49).  Lewis's requests therefore came well after the deadline and without any request to extend the deadline set by the Scheduling Order.

Pursuant to Federal Rule of Civil Procedure 15(a), a plaintiff is entitled to amend his complaint without leave of court or the opposing party's written consent within twenty-one days after serving it, or within twenty-one days after a responsive pleading has been served. Otherwise, a plaintiff must either obtain the opposing party's written consent or seek leave to amend his complaint.  Fed. R. Civ. P. 15(a)(2).  However, "[o]nce a scheduling order's deadline passes, a plaintiff must show good cause under Rule 16(b) for failure to seek leave to amend before a court will consider whether the amendment is proper under Rule 15(a)."  *E.E.O.C. v. U-Haul Int'l, Inc.*, 286 F.R.D. 322, 325 (W.D. Tenn. 2012) (quoting *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003)) (internal quotation marks omitted).  Rule 16(b) provides that a scheduling order "may be modified only for good cause and with the judge's consent."  Fed. R. Civ. P. 16(b)(4).  "A modification of the scheduling order by leave of court is appropriate only when a relevant deadline 'cannot reasonably be met despite the diligence of the party seeking the extension.'"  *E.E.O.C.*, 286 F.R.D. at 325 (quoting *Leary*, 349 F.3d at 906).

3

"Only if the plaintiff establishes 'good cause' does the Court proceed to the more permissive Rule 15(a)(2) analysis." *Porter v. AAR Aircraft Servs., Inc.*, 316 F.R.D. 691, 693 (W.D. Tenn. 2016) (citing *Commerce Benefits Grp. V. McKesson Corp.*, 326 Fed. App'x 369, 376 (6th Cir. 2009)). "[U]nder the deferential standard of Federal Rule of Civil Procedure 15, . . . the Court 'should freely give leave when justice so requires.'" *Id.* at 692 (quoting Fed. R. Civ. P. 15(a)(2)). An exception to this forgiving standard is when a proposed amendment is futile. *Id.* (citing *Pedreira v. Ky. Baptist Homes for Child., Inc.*, 579 F.3d 722, 729 (6th Cir. 2009)); *see also Foman v. Davis*, 371 U.S. 178, 182, (1962). "A proposed amendment is futile if the amendment could not withstand a Rule 12(b)(6) motion to dismiss." *Berry v. Regions Fin. Corp.*, 507 F. Supp. 3d 972, 977 (W.D. Tenn. 2020), *appeal dismissed*, No. 21-5038, 2021 WL 1511687 (6th Cir. Jan. 29, 2021) (quoting *Riverview Health Inst. LLC v. Med. Mut. of Ohio*, 601 F.3d 505, 512 (6th Cir. 2010)). Denial of a motion to amend also "is appropriate where there is 'undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc.'" *Joy v. Burchyett*, No. 1:21-cv-01190-STA-jay, 2022 WL 16787846, at *2 (W.D. Tenn. Nov. 8, 2022) (quoting *Benzon v. Morgan Stanley Distribs., Inc.*, 420 F.3d 598, 613 (6th Cir. 2005)).

Though Lewis requested leave to amend his Complaint well after the Scheduling Order's deadline, he has shown good cause for his delay. Lewis explains that he seeks to amend the Complaint "based on information that has come to light or been further refined since the filing" of the Complaint. (ECF No. 49, at 2.) Further, though USPS objects to Lewis's general request for leave to amend in his Response to USPS's Motion to Dismiss (ECF No. 50, at 1–2), Lewis had already cured this deficiency by filing the Motion to Amend—complete with the proposed

4

Amended Complaint—before USPS raised that objection (ECF No. 49).  In light of Lewis's *pro se* status and the fact that he filed the Motion to Amend only two months after the expiration of the Scheduling Order's deadline to amend the pleadings, the Court finds that Lewis has shown good cause to consider his otherwise late proposed amendment.  USPS has also demonstrated no undue delay, dilatory motive, or undue prejudice caused by the delay.  As such, the Court focuses its analysis herein on whether Lewis's proposed amendments would be futile.  That is, the Court will address whether the claims in the proposed Amended Complaint could withstand the Rule 12(b)(6) arguments raised in USPS's Motion to Dismiss.  *See Avery Outdoors, LLC v. Peak Rock Cap., LLC*, No. 16-cv-2229-SHL-tmp, 2017 WL 5186246, at *3 (W.D. Tenn. Jan. 23, 2017) (setting forth and considering the Rule 12(b)(6) standard of review when granting in part and denying in part a motion to amend the complaint).

## II.     Standard of Review for Futility/Failure to State a Claim

To determine whether Lewis's proposed Amended Complaint states a claim for which relief may be granted, the Court applies the standards under Rule 12(b)(6), as articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). "Federal Rule of Civil Procedure 8(a)(2) requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555 (internal citations and quotations omitted).  The Court "construes the complaint in a light most favorable to [the] plaintiff" and "accepts all factual allegations as true" to determine whether they plausibly suggest an entitlement to relief.  *HDC, LLC v. City of Ann Arbor*, 675 F.3d 608, 611 (6th Cir. 2012). "When a Court considers whether dismissal for failure to state a claim is appropriate, the Court may consider the complaint and attached exhibits, as well as any public records, so long as

5

they are referred to in the complaint and are central to the claims contained therein." *Harper v. Shelby Cnty. Gov't*, No. 2:15-cv-2502-STA-cgc, 2016 WL 737947, at *4 (W.D. Tenn. Feb. 23, 2016) (citing *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001)).

Pleadings provide facial plausibility when they present "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  However, "pleadings that . . . are no more than conclusions[] are not entitled to the assumption of truth.  While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 n.3 ("Rule 8(a)(2) still requires a 'showing,' rather than a blanket assertion, of entitlement to relief.  Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests.").

"[A] pleading filed *pro se* is to be liberally construed and held to less stringent standards than a pleading filed by counsel." *Kondaur Cap. Corp. v. Smith*, 802 F. App'x 938, 945 (6th Cir. 2020) (citing *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)); s*ee also Vandiver v. Vasbinder*, 416 F. App'x 560, 562 (6th Cir. 2011) (finding the less stringent standard applies to *pro se* complaints, "however inartfully pleaded").  Nevertheless, *pro se* litigants "are not exempt from the requirements of the Federal Rules of Civil Procedure." *Wright v. Penguin Random House*, 783 F. App'x 578, 581 (6th Cir. 2019) (citing *Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 376 (6th Cir. 2006)); *see also Young Bok Song v. Gipson*, 423 F. App'x 506, 510 (6th Cir. 2011) ("[W]e decline to affirmatively require courts to ferret out the strongest cause of action on behalf of *pro se* litigants.  Not only would that duty be overly burdensome, but it would also transform the courts from neutral arbiters of disputes into advocates for a particular party.  While courts are

6

properly charged with protecting the rights of all who come before it, that responsibility does not encompass advising litigants as to what legal theories they should pursue."); *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) ("[A] court cannot 'create a claim which a plaintiff has not spelled out in his pleading.'") (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)). "A pro se complaint must still 'contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Shelby v. Greystar Mgmt. Servs., L.P.*, No. 2:17-cv-02650-SHM-cgc, 2018 WL 386647, at *2 (W.D. Tenn. Jan. 11, 2018) (quoting *Barnett v. Luttrell*, 414 F. App'x. 784, 786 (6th Cir. 2011)).

## III.    Title VII Claims

"Exhaustion of administrative remedies is a prerequisite to filing an employment discrimination case." *Adebisi v. Univ. of Tenn.*, No. 2:06-cv-2397-MSN-tmp, 2007 WL 9710067, at *1 (W.D. Tenn. Mar. 22, 2007) (collecting cases). Stated differently, "[i]n order for federal courts to have subject matter jurisdiction of [employment discrimination] claims, the claimant must first unsuccessfully pursue administrative relief." *Id.* at *2 (quoting *Ang v. Proctor & Gamble Co.*, 922 F.2d 540, 545 (6th Cir. 1991) (internal quotation marks omitted)). "To exhaust, an employee must file a charge of discrimination with the EEOC that includes all claims the employee intends to bring in district court." *Id.* (citing *Younis v. Pinnacle Airlines, Inc.*, 610 F.3d 359, 361 (6th Cir. 2010)).

However, "a failure to exhaust administrative remedies . . . is not a jurisdictional bar, but rather a condition precedent to an action in federal court." *McKnight v. Gates*, 282 F. App'x 394, 397 n.2 (6th Cir. 2008) (citing *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393–98 (1982); *Mitchell v. Chapman*, 343 F.3d 811, 819–20 (6th Cir. 2003)). "As such, it is subject to waiver, estoppel, and equitable tolling." *Powers v. U.S. & Sec'y of Dep't of Health & Hum.*

*Servs.*, No. 16-13668, 2020 WL 4587415, at *6 (E.D. Mich. Apr. 6, 2020), *report and*

*recommendation adopted sub nom. Powers v. Sec'y of Dep't of Health & Hum. Servs.*, No. 16-

cv-13668, 2020 WL 3969680 (E.D. Mich. July 14, 2020) (citing *McFarland v. Henderson*, 307

F.3d 402, 406 (6th Cir. 2002)).

Lewis's Title VII claims fail at the threshold due to his failure to exhaust administrative

remedies.  It is undisputed that Lewis did not file a charge of discrimination with the EEOC

before filing this case.  (ECF No. 43, at 9 ("Plaintiff . . . did not file a formal charge of

discrimination with the agency's EEO . . . .").)  He contends, however, that the doctrines of

equitable tolling and/or estoppel should apply to excuse his failure to exhaust those

administrative remedies.[4]  (ECF No. 49-1, at 22–23.)

First, equitable tolling cannot save his claims.  Lewis bears the burden of demonstrating

that the exhaustion deadline should be tolled due to, for example, his lack of notice of the

deadline or his diligence in trying to meet the deadline.  *See Powers*, 2020 WL 4587415, at *7

(citing *Allen v. Yukins*, 355 F.3d 396, 401 (6th Cir. 2004); *Steiner v. Henderson*, 354 F.3d 432,

435 (6th Cir. 2003)).  Lewis cannot do so because, not only did he fail to timely file a claim, he

has failed to file a claim at all.  As Lewis has still never filed a complaint with the EEOC,

equitable tolling does not apply to excuse Lewis's total failure to exhaust.  *See id.* at *9.

Furthermore, though the Court acknowledges Lewis's documented mental health diagnoses,[5] the

---

[4] Lewis also seemingly asserts that USPS has waived its right to challenge his failure to exhaust
(*see generally* ECF No. 49-1, at 22–24), but he offers nothing to support that position, and,
indeed, USPS challenged Lewis's claims based on failure to exhaust in both its Answer and
Motion to Dismiss (*see* ECF No. 14, at 3; ECF No. 39, at 2).  The Court therefore declines to
address waiver.

[5] Lewis discusses his struggles with "severe psychological trauma" and resulting diagnoses in his
Motion to Toll Statutes of Limitations (ECF No. 30) and accompanying exhibits (ECF No. 51),
which were filed under seal.

record reveals that he did consult a USPS EEO counselor in 2019 regarding his claims. (ECF No. 43, at 9.) After that meeting, he received a letter outlining his right to file a formal charge and the applicable deadline to do so. (*See* ECF No. 50-1, at 1–2.) Despite being put on notice of his rights, Lewis still declined to pursue a formal charge. (ECF No. 43, at 9.) These facts do not support the assertion that Lewis's alleged mental incapacity was so severe as to render him incapable of administratively exhausting his claims. *See Powers*, 2020 WL 4587415, at *10. And Lewis's diagnoses "are not reasonable excuses given his general awareness of his rights." *Middleton v. Octapharma Plasma, Inc.*, No. 18-10039, 2019 WL 6170865, at *5 (E.D. Mich. July 10, 2019).

Estoppel also does not apply to excuse Lewis's failure to exhaust. Lewis alleges that he "made substantive attempts in 2019 to address the injustices with which he was face[d] using [USPS]'s internal EEO process," but he apparently declined to pursue a formal charge due to the complex nature of the process.[6] (ECF No. 49-1, at 24.) Even assuming USPS engaged in conduct intended to mislead Lewis regarding how to pursue his claims, Lewis's engagement with USPS's internal EEO process—followed by his continued failure to exhaust his administrative remedies—demonstrates that estoppel does not apply to excuse the exhaustion requirement. *See Powers*, 2020 WL 4587415, at *11 ("[P]laintiff was given accurate information by an EEO counselor . . . , but she still did not even attempt to exhaust administrative remedies . . . .").

In short, Lewis has failed to demonstrate entitlement to the application of these equitable doctrines. Because the exhaustion requirement is strictly construed in Title VII cases brought by

---

[6] Though the proposed Amended Complaint purports that Lewis did not pursue a claim due to the complex nature of the administrative process (ECF No. 49-1, at 24), he previously indicated in his Response to USPS's Motion to Dismiss that he declined to pursue a formal charge after learning that he could not do so anonymously (ECF No. 43, at 9).

federal employees, Lewis's failure to exhaust administrative remedies is fatal to his Title VII claims. *See Figueroa v. U.S. Postal Serv.*, 422 F. Supp. 2d 866, 880 (N.D. Ohio 2006), *aff'd*, 220 F. App'x 407 (6th Cir. 2007) ("In permitting federal employees to sue under Title VII, Congress conditioned the government's waiver of sovereign immunity upon a plaintiff's satisfaction of rigorous administrative exhaustion requirements and time limitations." (internal quotations marks and citations omitted)).  Those claims are futile and should be disallowed from the Amended Complaint.

## IV.    Rehabilitation Act Claim

Lewis's proposed Amended Complaint purports to raise a claim under the Rehabilitation Act.  "The Rehabilitation Act is a federal employee's exclusive remedy for employment related discrimination based on a disability."  *Plautz v. Potter*, 156 F. App'x 812, 815 (6th Cir. 2005) (citing 42 U.S.C. § 12111(5)(B)).  "[H]andicapped employees have the right to sue federal employers under the [Rehabilitation] Act 'subject to the provision for exhaustion of administrative remedies and other rules for procedures set forth in Title VII.'"  *Smith v. U.S. Postal Serv.*, 742 F.2d 257, 261 (6th Cir. 1984) (quoting 124 Cong. Rec. 30,347 (1978) (remarks of Sen. Cranston)).  "In the context of private employers and private employees, however, there is no exhaustion requirement."  *Tuck v. HCA Health Serv's of Tenn.*, 7 F.3d 465, 470 (6th Cir. 1993).

Assuming, as Lewis alleges, that he was an employee of USPS rather than an independent contractor, he was required to exhaust his administrative remedies prior to initiating this action because USPS is a federal employer.  As discussed above in the Title VII context, Lewis failed to do so, and no equitable doctrine excuses that failure.  His Rehabilitation Act claim is thus futile as well and should not be permitted in the Amended Complaint.

**V.      Privacy Act Claim**

Lewis contends that USPS violated the Privacy Act by improperly disclosing personally identifiable information belonging to other individuals.  (ECF No. 49-1, at 30.)  First, Lewis states that he received a document containing "Personally Identifiable Information . . . of a prior CDS carrier" on or about January 18, 2016.  (*Id.* at 11.)  He also allegedly received a "pending security clearance packet of a young man named 'Quoran,'" who Lewis believes "to be related to a current CDS carrier."  (*Id.* at 12.)  Finally, during discovery in this matter, USPS allegedly produced documents purported to be Lewis's personnel file, but the produced file instead belonged to Lewis's father, a former USPS employee who shares the same name.  (*Id.* at 19.)  Though Lewis generically alleges that USPS disclosed his own personally identifiable information as well, the proposed Amended Complaint does not identify any instance of such disclosure.  (ECF No. 49-1, at 30.)

"The Privacy Act regulates the 'collection, maintenance, use, and dissemination of information' about individuals by federal agencies."  *Shearson v. Holder*, 865 F. Supp. 2d 850, 867 (N.D. Ohio 2011), *aff'd*, 725 F.3d 588 (6th Cir. 2013) (quoting *Doe v. Chao*, 540 U.S. 614, 618 (2004)).  Under the Act, federal agencies are prohibited from disclosing "'any record which is contained in a system of records by any means of communication to any person, or to another agency,' subject to several exceptions."  *Id.* (quoting 5 U.S.C. § 552a(b)).  "If an agency intentionally or willfully violates [the Privacy Act], or any rule promulgated under it, in such a way as to have an adverse effect on an individual, the aggrieved individual may bring a civil action against the agency . . . ."  *Romero-Vargas v. Shalala*, 907 F. Supp. 1128, 1132 (N.D. Ohio 1995) (citing 5 U.S.C. § 552a(g)(1)(D), (g)(4)).  "[T]he reference in § 552a(g)(1)(D) to 'adverse effect' acts as a term of art identifying a potential plaintiff who satisfies the injury-in-fact and

11

causation requirements of Article III standing, and who may consequently bring a civil action without suffering dismissal for want of standing to sue." *Doe*, 540 U.S. at 624.

Lewis has not pled that he experienced any adverse effect from USPS's disclosure of others' personal information, and he lacks standing to pursue any alleged disclosure on behalf of others. "[A] Privacy Act plaintiff must assert his or her own legal rights under the Act and not the rights of others." *Sirmans v. Caldera*, 27 F. Supp. 2d 248, 250 (D.D.C. 1998); *see also Gerlick v. U.S. Dep't of Justice*, 659 F. Supp. 2d 1, 18–19 (D.D.C. 2009) (finding the plaintiffs lacked standing to bring Privacy Act claims on behalf of others). As Lewis has failed to plead any disclosure of his own information or any harm personal to him, his Privacy Act claim is futile and should be disallowed from the Amended Complaint.

## VI.    FLSA Claim

Lewis alleges that USPS "unlawfully failed to pay [him] the applicable minimum wage for all hours worked and/or failed to pay [him] overtime compensation." (ECF No. 49-1, at 31.) USPS's sole argument as to the FLSA claim is that Lewis is properly categorized as an independent contractor, not an employee. (ECF No. 39, at 8; ECF No 50, at 10–11.)

The FLSA seeks to mitigate "labor conditions detrimental to the maintenance of the minimum standard of living necessary for health, efficiency, and general well-being of workers." 29 U.S.C. § 202(a). "The legislative history of the [FLSA] shows an intent on the part of Congress to protect certain groups of the population from substandard wages and excessive hours . . . ." *Steele v. Staffmark Invs., LLC*, 172 F. Supp. 3d 1024, 1026 (W.D. Tenn. 2016) (quoting *Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 706–07 (1945)). An employee generally has the right to bring an action against "any employer who violates the provisions of" the FLSA. 29 U.S.C. § 216(b). "Independent contractors do not enjoy FLSA's protections." *Keller v. Miri*

*Microsystems LLC*, 781 F.3d 799, 806 (6th Cir. 2015) (citing *Rutherford Food Corp. v. McComb*, 331 U.S. 722, 729 (1947)). The Supreme Court has held, however, that a business cannot avoid liability for overtime wages by labeling a worker an "independent contractor" when, in reality, the worker performs duties that are characteristic of an employee. *Id.* (citing *Rutherford*, 331 U.S. at 729).

The Sixth Circuit has made clear that "employees are those who as a matter of economic reality are dependent upon the business to which they render service." *Id.* (quoting *Donovan v. Brandel*, 736 F.2d 1114, 1116 (6th Cir. 1984)) (internal quotation marks omitted). To determine whether a worker labeled as an independent contractor is, as a matter of economic reality, an employee, the Sixth Circuit weighs six factors:

> 1) the permanency of the relationship between the parties; 2) the degree of skill required for the rendering of the services; 3) the worker's investment in equipment or materials for the task; 4) the worker's opportunity for profit or loss, depending upon his skill; . . . 5) the degree of the alleged employer's right to control the manner in which the work is performed[; and] . . . [6)] whether the service rendered is an integral part of the alleged employer's business.

*Id.* (citing *Brandel*, 736 F.2d at 1117 n.5). Courts generally consider the factors "in light of the totality of the circumstances in making decisions as to the parties' relationship." *Hodge v. White*, No. 2:24-cv-02179-MSN-atc, 2025 WL 1842106, at *4 (W.D. Tenn. May 23, 2025), *report and recommendation adopted*, No. 2:24-cv-02179-MSN-atc, 2025 WL 1912760 (W.D. Tenn. July 11, 2025) (citing *Keller*, 781 F.3d at 815).

Lewis has sufficiently alleged in the proposed Amended Complaint that he was an employee for purposes of the FLSA. As to the first factor, Lewis alleges that he delivered for USPS from 2015 through 2019 (ECF No. 49-1, at 4), suggesting some level of permanency of the relationship. *See Hodge*, 2025 WL 1842106, at *6 (finding that a transactional relationship lasting only approximately four months indicated independent-contractor status). Further, Lewis

13

was allegedly "barred from providing delivery services for any other customer while performing under" his contract with USPS.  (ECF No. 49-1, at 16.)  This fact also weighs in Lewis's favor because "even short, exclusive relationships between the worker and the company may be indicative of an employee-employer relationship."  *Keller*, 781 F.3d at 807 (citing *Sec'y of Labor v. Lauritzen*, 835 F.2d 1529, 1537 (7th Cir. 1987)).

The proposed Amended Complaint does not set forth compelling facts with respect to the second factor.  At most, Lewis contends that he "was promised training similar to that provided to rural carriers."  (ECF No. 49-1, at 18.)  Without more, the Court cannot conclude that this factor weighs in favor of an employee-employer relationship.  *See Dowd v. DirecTV, LLC*, No. 14–cv–14018, 2016 WL 28866, at *3 (E.D. Mich. Jan. 4, 2016) (finding the second factor weighed in favor of an employment relationship where the plaintiffs alleged that they were required to attend trainings designed by the defendant and to obtain an industry-specific certification).

As to the third factor, Lewis admits that he used his personal vehicle while performing delivery services but maintains that USPS provided all other tools, including "post office building/facilities, mail sorting cases, case labels, flat mail trays, EMM trays, mail totes, mail carts, electronic scanners, COD envelopes, stationary, pens, boxes, tape, etc." (ECF No. 49-1, at 16.)  Lewis also alleges that USPS reimbursed him for his business expenses, including a right-hand-drive vehicle conversion to his personal vehicle.  (*Id.* at 17.)  Though Lewis's use of his personal vehicle suggests some investment on his part, the allegations that USPS provided all other tools and reimbursed him for business expenses and the conversion of his vehicle weigh in favor of a finding of employee status at this stage.  *See Keller*, 781 F.3d at 810 ("'[I]nvestment of a vehicle is no small matter, [but] that investment is somewhat diluted when one considers that

14

the vehicle is also used by most drivers for personal purposes.'") (quoting *Herman v. Express Sixty-Minutes Delivery Serv., Inc.*, 161 F.3d 299, 304 (5th Cir. 1998)).

As to the fourth factor, Lewis alleges that USPS set his rate of pay and required him to record and submit timesheets.  (ECF No. 49-1, at 17.)  These facts suggest that Lewis may not have had "significant control over his opportunity for profit or loss," *Hodge*, 2025 WL 1842106, at *5, thus weighing, at least slightly, in favor of an employee–employer relationship.

As to the fifth factor, Lewis alleges that USPS "assigned reporting times, routes, and turn-by-turn delivery instructions" and he was "barred from providing delivery services for any other customer while performing under" his contract with USPS.  (ECF No. 49-1, at 16–17.) Lewis also contends that he was "subject to direct supervision, issued USPS equipment, issued a temporary employee ID number," and "reprimanded for route deviations."  (*Id.* at 17.)  These facts indicate that USPS exercised some degree of control over the manner in which Lewis performed his duties.  *See Hodge*, 2025 WL 1842106, at *6 (finding that the defendant company exercised little-to-no control over the plaintiff's activities where the plaintiff "had the ability to accept or reject load assignments and could work for and with other companies"); *see also Bonnetts v. Arctic Exp., Inc.*, 7 F. Supp. 2d 977, 984 (S.D. Ohio 1998) (finding a sufficient dispute of fact as to employer-like control where the plaintiff alleged that the defendant company reprimanded him for route deviations, controlled the terms of his compensation and hiring of additional personnel, and treated him the same as other drivers who were deemed employees).

Regarding the sixth factor, Lewis states that he "performed core delivery services" for USPS from 2015 through 2019.  (ECF No. 49-1, at 4.)  He does not elaborate further, but it can be reasonably assumed that delivery drivers serve an integral role in USPS's business of mail and package delivery across the United States.  *See Dowd*, 2016 WL 28866, at *6 (highlighting

15

the "important role of 'common sense' in evaluating motions to dismiss" in assessing whether the plaintiffs performed services that were integral to the defendant's business) (citing *Iqbal*, 556 U.S. at 664)).

Lewis's allegations plausibly weigh—to varying degrees—in his favor as to five of the six factors of the economic realities test. Because no single factor is determinative, and the inquiry must be conducted in light of the totality of the circumstances, the pleaded facts are sufficient to survive dismissal under Rule 12(b)(6). *See Keller*, 781 F.3d at 807. It is therefore recommended that this case proceed on the FLSA claim as stated in the Amended Complaint.

## VII.    USPS's Motion to Dismiss

Because the Court recommends granting in part and denying in part Lewis's Motion to Amend, the Court further recommends that USPS's Motion to Dismiss be denied without prejudice as moot. As discussed above, to the extent USPS's arguments in the Motion to Dismiss are applicable to the proposed Amended Complaint, they are considered in the futility analysis above.

## RECOMMENDATION

For the foregoing reasons, the Court recommends that the Motion to Amend be granted in part and denied in part. Specifically, it is recommended that Lewis be permitted to proceed only on his FLSA claim against USPS and that all other claims be rejected. The Court also recommends that USPS's Motion to Dismiss be denied without prejudice.

Respectfully submitted this 17th day of February, 2026.

s/Annie T. Christoff
ANNIE T. CHRISTOFF
UNITED STATES MAGISTRATE JUDGE

16

## NOTICE

Within fourteen (14) days after being served with a copy of this report and recommendation disposition, a party may serve and file written objections to the proposed findings and recommendations.  A party may respond to another party's objections within fourteen (14) days after being served with a copy.  Fed. R. Civ. P. 72(b)(2).  Failure to file objections within fourteen (14) days may constitute waiver/forfeiture of objections, exceptions, and further appeal.